UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v. -

MOISES DISLA RAMOS,

Defendant.

No. 22 Cr. 431 (LJL)

**MOTION FOR SUPRESSION OF MATERIALS
SEIZED PURSUANT TO SEARCH WARRANTS**

David E. Patton, Esq.
Federal Defenders of New York, Inc.
52 Duane Street - 10th Floor
New York, New York 10007
Tel.: (212) 417-8700

*Counsel for Moises Disla Ramos*

**Marne L. Lenox**
**Kristoff Williams**
*Of counsel*

To: **DAMIAN WILLIAMS, ESQ.**
      United States Attorney
      Southern District of New York
      One St. Andrew's Plaza
      New York, New York 10007

      Attn: **NI QIAN, ESQ.**
              Assistant United States Attorney
              Southern District of New York

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

I.    PRELIMINARY STATEMENT ......................................................................... 1

II.   FACTUAL BACKGROUND .............................................................................. 2

    A.  **The August 5, 2022 warrant sought historical cell site location information and prospective GPS location monitoring of Mr. Disla Ramos's phone. ........................... 3**

    B.  **The August 9, 2022 warrant sought to search ███████████ ███████████ in the Bronx, New York. .............................................................. 5**

        1.  The supporting affidavit included little information connecting Moises Disla Ramos to the ███████████ ███████████ address. .................. 7

        2.  The supporting affidavit included little information asserting probable cause for the search of ███████████ ███████████ ........................ 8

        3.  The supporting affidavit included little information asserting probable cause to seize and search electronic devices at ███████████ ███████████ ......... 9

III.  LEGAL STANDARD ......................................................................................... 9

IV.   ARGUMENT ..................................................................................................... 11

    A.  **The Court should suppress the materials seized pursuant to the August 5, 2022 historical cell site location information warrant. ....................................... 11**

        1.  The historical cell site information warrant did not establish a sufficient nexus between Moises Disla Ramos and the alleged criminal offenses. ........................ 11

        2.  The historical cell site warrant was overbroad. ........................................... 17

    B.  **The Court should suppress the materials seized pursuant to the August 9, 2022 premises search and electronic information warrant. ........................................ 20**

        1.  The premises search warrant affidavit did not supply probable cause to believe evidence of the subject offenses would be found at ███████████ ███████████ .... 20

        2.  The premises search warrant affidavit did not supply probable cause to seize all electronic devices found inside of ███████████ ███████████ .................. 23

        3.  The search and seizure of "electronically stored information" authorized by the premises search warrant is overbroad. ....................................................... 28

4.  The government's search of the electronic device seized from the premises was unreasonable. ........................................................................................................... 31

**C.  Suppression is necessary to deter government misconduct. ........................................ 32**

V.    CONCLUSION ............................................................................................................. 34

# TABLE OF AUTHORITIES

## Cases

*Arizona v. Gant*,
    556 U.S. 332 (2009)............................................................................................ 18

*Brigham City v. Stuart*,
    547 U.S. 398 (2006).......................................................................................... 32

*Burns v. United States*,
    235 A.3d 758 (D.C. 2020) ........................................................................... 27, 31

*Carpenter v. United States*,
    138 S. Ct. 2206 (2018)............................................................... 1, 10, 11, 17

*Com. v. Broom*,
    474 Mass. 486 (2016) ...................................................................................... 24

*Coolidge v. New Hampshire*,
    403 U.S. 443 (1971).......................................................................................... 32

*Demaree v. Pederson*,
    887 F.3d 870 (9th Cir. 2018) ......................................................................... 32

*Fla. v. Jardines*,
    569 U.S. 1 (2013).............................................................................................. 10

*Illinois v. Gates*,
    462 U.S. 213 (1983)............................................................................. 10, 12, 13

*In re 650 Fifth Ave. & Related Properties*,
    830 F.3d 66 (2d Cir. 2016) ............................................................................. 25

*Maryland v. Garrison*,
    480 U.S. 79 (1987)............................................................................................ 18

*Payton v. New York*,
    540 U.S. 551 (1980)................................................................................... 10, 20

*Riley v. California*,
    573 U.S. 373 (2014)......................................................................... 10, 18, 29

*Rivera v. United States*,
    928 F.2d 592 (2d Cir. 1991) .......................................................................... 14

*Schneckloth v. Bustamonte*,
    412 U.S. 218 (1973)......................................................................................... 10

*Silverman v. United States*,
   365 U.S. 505 (1961)..................................................................... 10

*Steagald v. United States*,
   451 U.S. 204 (1981)..................................................................... 21

*United States v. Abboud*,
   438 F.3d 554 (6th Cir. 2006) ...................................................... 18

*United States v. Awadallah*,
   349 F.3d 42 (2d Cir. 2003) ................................................... 14, 15

*United States v. Benacquista*,
   2009 WL 1651458 (W.D.N.Y. June 8, 2009).............................. 16

*United States v. Brown*,
   828 F.3d 375 (6th Cir. 2016) ................................................ 20, 22

*United States v. Canfield*,
   212 F.3d 713 (2d Cir. 2000) ...................................................... 16

*United States v. Chesher*,
   678 F.2d 1353 (9th Cir. 1982) .................................................... 17

*United States v. Comprehensive Drug Testing, Inc.*,
   621 F.3d 1162 (9th Cir. 2010) .................................................... 32

*United States v. Costin*,
   No. 5 Cr. 38, 2006 WL 2522377 (D.Conn. July 31, 2006) ........... 19

*United States v. Davis*,
   714 F.2d 896 (9th Cir. 1983) ...................................................... 14

*United States v. Falso*,
   544 F.3d 110 (2d Cir. 2008) ...................................................... 14

*United States v. Ferguson*,
   758 F.2d 843 (2d Cir. 1985) ...................................................... 16

*United States v. Ford*,
   184 F.3d 566 (6th Cir. 1999) ...................................................... 18

*United States v.* Gaines,
   No. 3:20CR126 (JBA), 2021 WL 4263375 (D. Conn. Sept. 20, 2021)............................ 18, 29

*United States v. Galpin*,
   720 F .3d 436 (2d Cir. 2013) ............................................ 18, 25, 29

*United States v. Ganias*,
    824 F.3d 199 (2d. Cir. 2016) ........................................................................ 33

*United States v. George*,
    975 F.2d 72 (2d Cir. 1992) .......................................................................... 25

*United States v. Griffith*,
    867 F.3d 1265 (D.C. Cir. 2017) ............................................................ passim

*United States v. Harris*,
    464 F.3d 733 (7th Cir. 2006) ....................................................................... 15

*United States v. Harvey*,
    No. 21-CR-335 (SJ), 2022 WL 684050 (E.D.N.Y. Mar. 8, 2022) .............. 27, 28

*United States v. Hernandez*,
    No. 09 CR 625 (HB), 2010 WL 26544 (S.D.N.Y. Jan. 6, 2010) ................... 19

*United States v. Higgins*,
    557 F.3d 381 (6th Cir. 2009) ....................................................................... 22

*United States v. Jones*,
    565 U.S. 400 (2012) .................................................................................... 17

*United States v. Koschtschuk*,
    2011 WL 867569 (W.D.N.Y. Mar. 10, 2011) ............................................... 16

*United States v. Lebowitz*,
    647 F.Supp.2d 1336 (N.D. Ga. 2009) .......................................................... 30

*United States v. Leon*,
    468 U.S. 897 (1984) ............................................................................. 15, 32

*United States v. Levasseur*,
    816 F.2d 37 (2d Cir. 1987) .......................................................................... 15

*United States v. Lustyik*,
    57 F.Supp.3d 213 (S.D.N.Y. 2014) .............................................................. 30

*United States v. Lyles*,
    910 F.3d 787 (4th Cir. 2018) ....................................................................... 24

*United States v. Medlin*,
    842 F.2d 1194 (10th Cir. 1988) ................................................................... 33

*United States v. Nejad*,
    436 F. Supp. 3d 707 (S.D.N.Y. 2020) .......................................................... 19

*United States v. Padilla,*
  986 F. Supp. 163 (S.D.N.Y. 1997) ................................................................ 17, 32

*United States v. Rajaratnam,*
  719 F.3d 139 (2d Cir. 2013) ......................................................................... 15, 16

*United States v. Ramirez,*
  523 U.S. 65 (1998) .............................................................................................. 32

*United States v. Ray,*
  541 F. Supp. 3d 355 (S.D.N.Y. 2021) ................................................................ 19

*United States v. Raymonda,*
  780 F.3d 105 (2d Cir. 2015) ................................................................................ 10

*United States v. Reilly,*
  76 F.3d 1271 (2d Cir. l996) ................................................................................. 15

*United States v. Robinson,*
  No. 16-CR-545 (S-3)(ADS), 2018 WL 5928120 (E.D.N.Y. Nov. 13, 2018) .......................... 28

*United States v. Roman,*
  311 F. Supp. 3d 427 (D. Mass. 2018) .................................................................. 16

*United States v. Rubinstein,*
  2010 WL 2723186 (S.D. Fla. Jun. 24, 2010) ....................................................... 30

*United States v. Smith,*
  967 F.3d 198 (2d Cir. 2020) ................................................................................ 29

*United States v. Travisano,*
  724 F.2d 341 (2d Cir. 1983) ................................................................................ 21

*United States v. Vilar,*
  2007 WL 1075041 (S.D.N.Y. Apr. 4, 2007) .................................................... 15, 30

*United States v. Wagner,*
  989 F.2d 69 (2d Cir. 1993) .................................................................................. 14

*United States v. Westover,*
  812 F. Supp. 38 (D. Vt. 1993) ............................................................................. 16

*United States v. Zemlyansky,*
  945 F. Supp. 2d 438 (S.D.N.Y. 2013) .............................................................. 19, 26

*Varnish v. Best Medium Pub. Co.,*
  405 F.2d 608 (2d Cir. 1968) ................................................................................ 15

*Wheeler v. City of Lansing*,
   660 F.3d 931 (6th Cir. 2011) ............................................................ 26

*Wong Sun v. United States*,
   371 U.S. 471 (1963) ......................................................................... 20

*Young v. Conway*,
   698 F.3d 69 (2d Cir. 2012) ............................................................. 20

*Zurcher v. Stanford Daily*,
   436 U.S. 547 (1978) ......................................................................... 21

**Statutes**

Fed. R. Crim. P. 41 .............................................................................. 31

U.S. Const. amend. IV ...................................................................... 9, 10

**Treatises**

2 LaFave, *Search and Seizure*, § 4.6(a) (4th ed. 2004) ..................... 19

## I.      PRELIMINARY STATEMENT

In the dark hours of March 31, 2022, two men were robbed in the Bronx. Police arrived after the culprits fled. In the moments that followed, the complainants supplied only a vague description of the assailants, who donned face masks. Their account consisted primarily of generic clothing from the waist up: a black, puffy, quilted jacket. They never identified a perpetrator. No witnesses provided a meaningful description of any suspects, nor did any of the individuals who called 911 to report the robbery describe the perpetrators. No police arranged identifications were made.

Time passed. Law enforcement investigated. The government soon landed on a suspect: Moises Disla Ramos. He lived nearby and on the night of the robbery wore clothing that matched the vague description provided by the complainants. Exploiting thin, unreliable information to connect Mr. Disla Ramos to the offense, in August 2022, law enforcement executed a historical cell site location information warrant that sought "a detailed chronicle" of Mr. Disla Ramos's "physical presence compiled every day, every moment" over the course of five months. *Carpenter v. United States*, 138 S. Ct. 2206, 2220 (2018). The government then relied, in part, on the fruits of that search to secure a warrant to search Mr. Disla Ramos's home and *any* electronic devices found therein absent reason to believe Mr. Disla Ramos used an electronic device in the commission of the offense. Both warrants obscured critical information long known to the police that would weaken the probable cause analysis: The individual in surveillance video—who the government believes brandished a firearm in the commission of the offense—was matched by NYPD facial recognition technology to another person before law enforcement fingered Moises Disla Ramos.

This motion challenges two warrants seeking to search and seize: (1) historical cell site location information,[1] and (2) tangible and electronic evidence from Mr. Disla Ramos's home. The Court should find that the search warrants were unconstitutional for four reasons. *First*, the affidavits in support of the warrants did not establish a sufficient nexus between the property to be searched and the evidence sought. *Second*, the warrants were overbroad. *Third*, the government's search of the electronic device seized from the premises was unreasonable. *Fourth*, the affidavits in support of the warrants obscured the unreliability of their only named source, included stale information, and omitted potentially exculpatory identification evidence. For those reasons, the Court should suppress the evidence found. Alternatively, the Court should order an evidentiary hearing.

## II.    FACTUAL BACKGROUND

On August 5, 2022, the government secured a search warrant for Moises Disla Ramos's cell site location information for a five month period in connection with the March 31, 2022 robbery. The affidavit in support of the warrant established that a robbery occurred on March 31, 2022. The affidavit then relied on slight information connecting Mr. Disla Ramos to the offense, omitting material information critical to the probable cause determination, to allege that Mr. Disla Ramos committed the offense. The warrant also authorized the seizure of 45 days of "prospective location information."

Four days later, law enforcement arrested Moises Disla Ramos. That day, agents executed a premises search warrant for ███████████    ███████████ in the Bronx. The

---

[1] With respect to the cell site location information data, the government has not yet filed an expert notice indicating whether they intend to rely on this location information at trial and what conclusions their expert would draw from it. In the event that such a notice is filed, the defense reserves the right to file a *Daubert* motion relating to the limits of the reliability of this type of data.

warrant authorized law enforcement to seize any evidence related to the March 2022 robbery,

including firearms, ammunition, and items taken from the complainants in the course of the

offense. No firearms or ammunition were recovered. Nor were any of the alleged stolen items.

The premises search warrant also blessed the seizure and search of *any* electronic devices

recovered within Mr. Disla Ramos's home absent a case-specific assertion of probable cause to

believe evidence of the offense would be found on an electronic device.

Details of each warrant and application are below.[2]

### A.    The August 5, 2022 warrant sought historical cell site location information and prospective GPS location monitoring of Mr. Disla Ramos's phone.

On August 5, 2022, the government sought a warrant for historical cell site location

information for two phone numbers, including ▮▮▮▮▮▮▮▮, which belonged to Mr. Disla

Ramos. Ex. A; Ex. B. The warrant sought "prospective precision location and cell site data" and

"historical cell site data and toll records for the period from March 1, 2022" until August 5,

2022.; Ex. B at USAO_000058. The warrant listed the "subject offenses" as Hobbs Act robbery

(and conspiracy), and "924(c) (use of a firearm during a crime of violence)." *Id.* at

USAO_000047.

To establish that the subject offenses had been committed, the affidavit in support of the

warrant relied on a review of video surveillance and conversations with the two alleged victims.

The complainants, who did not identify any perpetrators, provided vague descriptions of the

---

[2] Attached to this motion are:
Ex. A:  Disla Ramos affidavit
Ex. B:  Historical cell site location information warrant and affidavit (USAO_000038–64)
Ex. C:  Premises search warrant (USAO_005462–85)
Ex. D:  Lease Renewal Form (USAO_005830–43)
Ex. E:  Facial Identification Section Lead (USAO_005900–01)

individuals who committed the robbery. According to one complainant, the individual who

brandished a firearm during the commission of the offense, "was wearing a black cloth mask, a

black, hooded, puffy, quilted, waist-length coat" and "appeared to be approximately six feet one

inch tall, average weight." *Id.* at USAO_000049. The second complainant described the same

individual as "taller and heavier" than the first complainant, "wearing a black quilted puffy coat

with a hood and a ski mask." *Id.* Neither of the complainants described the perpetrator's face,

skin tone, or age, nor did the complainants describe the perpetrator's clothes from the waist

down.

    To support its conclusion that Mr. Disla Ramos committed the robbery, the affidavit

relied primarily on a comparison of video surveillance of the robbery—which "did not have a

date or time stamp" and occurred at 10:00pm—with video surveillance inside of a nearby

building, ██████████████ in the Bronx. *Id.* at USAO_000050. According to the affidavit,

the video of the robbery revealed that one of the perpetrators wore "a black, shiny, hooded, puffy

jacket, light-colored jeans, with a white rectangular cloth hanging out of the back right pocket of

the jeans, and black shoes with a white trim on the bottom." *Id.* The affidavit goes on to describe

a similarly outfitted individual visible on video surveillance inside of ████████████

before and after the robbery. Comparing the surveillance, law enforcement decided that the

individual wearing a black, puffy, hooded coat inside of ███████████ and the individual

who brandished a weapon during the commission of the offense were one in the same. *Id.* at

USAO_000053.

    To identify this individual, law enforcement relied on two sources: (1) an informant, and

(2) tenant records. The informant "identified the individual in the surveillance videos from

within [██████████████ as an individual who resided in an apartment on the second floor

of [the building]" where the individual appears to walk from in the surveillance. *Id.* at USAO_000055. The informant did not name the individual in the surveillance, nor does the affidavit include any information about the basis of the informant's knowledge. The affiant then asserts, "I know that three individuals are listed as tenants" of the apartment, including Mr. Disla Ramos. *Id.* This "knowledge" appears to be based exclusively on a review of tenant records. The affidavit did not assert that these tenant records reviewed indicated who lived in the apartment during the relevant time period, March 31, 2022 through the early morning hours of April 1, 2022. The affiant then compared the ███████████ surveillance with a photograph of Mr. Disla Ramos maintained by the NYPD, and concluded they were the same individual. *Id.*

The affidavit omitted two critical pieces of information then known to the police. *First*, that the tenant records referenced in the affidavit, which listed "Moises Disla" as a tenant in ██ ███████ ███████ are stale; the records are dated November 12, 2020. Ex. D, USAO_005838. No other tenant records or documents were relied upon to establish that Mr. Disla Ramos lived in the apartment at any point in 2022. *Second*, that on April 20, 2022, the NYPD became aware that facial recognition technology had identified a still frame of the individual in the ███████████ surveillance as a "possible match" to an individual who was *not* Moises Disla Ramos. Ex. E, USAO_005900; USAO_005785.

   **B.**    ***The August 9, 2022 warrant sought to search*** ███████████ ███████*** in the Bronx, New York.***

On August 9, 2022,  days after securing a warrant for real time GPS tracking for Mr. Disla Ramos's phone, the government received a warrant to search ███████████ ███████ Bronx, NY. Ex. C. The warrant stated that the items "to be seized" are the "[e]vidence, [f]ruits, and i[i]nstrumentalities" of the charged offenses. *Id.* at USAO_005482. The warrant then lists seven categories of tangible items to be seized:

1. "Evidence concerning occupancy or ownership" of the premises, "including without limitation" "utility and telephone bills, mail envelopes, addressed correspondence, diaries, statements, identification documents, address books, telephone directories, and keys";

2. "Particular clothing worn by MOISES DISLA during the robbery" including "light colored jeans, dark colored puffy jacket, balaclava mask, dark sneakers with white trim on the bottom, and a white cloth";

3. "Firearms";

4. "Ammunition";

5. "Cash";

6. "Items taken from the victims during the Robbery" including a 14 karat gold chain, "cellphones, and an Adidas-branded small cross-body bag"; and

7. "Electronic devices," which would be searched for evidence such as "communications between co-conspirators of March 31, 2022 robbery, photographs of firearms and ammunition, photographs of cash, and photographs of the clothing used during the robbery on March 31, 2022."

*Id.* at USAO_005482–83.

The warrant also included a section entitled, "Review of ESI" ("electronically stored information"), permitting law enforcement to "use various techniques to locate information responsive to the warrant." *Id.* at USAO_005484. These techniques included "surveying various file 'directories,'" "opening or cursorily reading the first few 'pages' of such files," "scanning storage areas to discover and possibly recover recently deleted files or deliberately hidden files," "performing key word searches," and "reviewing metadata." *Id.* at USAO_005484–85. The warrant stated that while law enforcement is expected to "make reasonable efforts to search only for files, documents, or other electronically stored information" within the aforementioned categories, "law enforcement personnel are authorized to conduct a complete review of all the ESI from seized devices or storage media if necessary to evaluate its contents and to locate all data responsive to the warrant." *Id.* at USAO_005485.

6

The warrant did not limit the search to materials from a specific date range.

Upon executing the search warrant, law enforcement recovered, among other items: black and red sneakers; a black puffy jacket; an iPhone; and jeans. *Id.* at US_005447. The items not recovered include: any firearm; ammunition; a balaclava face mask; cash; gold chains; the complainants' cell phones; and an Adidas bag.

1.  **The supporting affidavit included little information connecting Moises Disla Ramos to the ██████████████ █████ address.**

The premises search warrant affidavit included Mr. Disla Ramos's indictment as an attachment and provided a summary of the charges. *Id.* at USAO_005476–005480. But the affidavit's recitation of probable cause to believe Mr. Disla Ramos resided at ███████ █████ ████████ at the time of the issuance of the search warrant was slight. To establish that Mr. Disla Ramos lived at that address, the affidavit relied on three feeble data points.

*First*, that "[r]ental records for the Building list MOISES DISLA as an occupant of the Subject Premises." *Id.* at USAO_005466. The affidavit did not state the date of the rental records reviewed nor did it establish that the rental records reflected that Mr. Disla Ramos was listed as an occupant of the apartment at or around the time of the offense, let alone months later when the warrant was sought. Indeed, the tenant records do not indicate that Mr. Disla Ramos lived in the apartment in 2022. Ex. D.

*Second*, that "an assistant to the superintendent for the Building" identified one of the individuals in the ██████████████ video surveillance—who he does not know by name—as a tenant in ██████████ Ex. C at USAO_005466–67. The affidavit did not establish how the assistant to the superintendent was familiar with the individual who lived in ██████████ how frequently he saw him, the context of these interactions, or how he knew the person in the

surveillance (now alleged to be Mr. Disla Ramos) lived in ███████████ In short, there are no

pleadings to establish the assistant superintendent's basis of knowledge for the identification.

And *third*, that Mr. Disla Ramos's phone was "in the vicinity of the Subject Premises

during the overnight hours." *Id.* at USAO_005467. The affidavit did not establish with precision

that the phone connected with Mr. Disla Ramos was located at the specific apartment searched,

nor that the phone was even inside of ████████████ but rather "in the vicinity of." *Id.*

The affidavit contained no other information linking Moises Disla Ramos to ████████

████ ███████

2.     **The supporting affidavit included little information asserting
       probable cause for the search of** ███████████ ████████
       ███

The probable cause showing in the premises search warrant affidavit that evidence of a

crime could be located at ███████████ ████████ rested on broad generalities based

on the affiant's "training and experience" that people generally keep things at their homes. *Id.* at

USAO_005470. To justify the search for seven categories of property, the affidavit simply

declares—without specificity—that individuals who engage in offenses of the kind charged

"often store items used to commit their robberies" "and the proceeds of their robberies" "in their

residence." *Id.* The affidavit also touts the agent's knowledge "that individuals typically keep

their clothes in the place where they live" to assert the likelihood of recovering the clothing that

matched the perpetrator's in the apartment. *Id.* Yet the clothing the premises search warrant itself

identifies to be seized is illustrated by still frames of video surveillance time stamped March 31,

2022 at 00:32:59 AM, nearly 24 hours *before* the robbery. *Id.* at USAO_005482.

The affidavit did not allege that anyone saw evidence of the offense inside of ███████

████ where in that location such items would be found; or why the agent believed, for instance,

that $5000 cash would be recovered four months after the offense. The affidavit further

neglected to allege that Mr. Disla Ramos was ever observed in possession of the items sought.

> **3.    The supporting affidavit included little information asserting
> probable cause to seize and search electronic devices at** ███████
> ███  ████████

Under a section titled "probable cause to search electronic devices," the affidavit for the

premises search warrant stated that based on the officer's "training and experience," "individuals

who engage in coordinated robberies commonly use cellphone[s] to communicate with co-

conspirators" and "often store data on their cellphones related to their illegal activity." *Id.* at

USAO_005470. There was no assertion in the affidavit to support the conclusion that any

electronic devices at all would be found at the location, let alone establish any connection

between devices found and evidence related to the commission of the offense. The only link

asserted in the affidavit between Mr. Disla Ramos and *any* electronic device is the allegation that

Mr. Disla Ramos communicated by phone with Jerinson Rosario, an alleged co-conspirator,

approximately one hour *after* the robbery. *Id.* The affidavit allege that the subject of the

communication between Mr. Rosario and Mr. Disla Ramos was the robbery. Nor did the

affidavit provided no reason to believe the phone Mr. Disla Ramos used to communicate with

Mr. Rosario one hour after a robbery that occurred four months prior would be in the apartment

when the warrant issued.

## III.    LEGAL STANDARD

The Fourth Amendment guarantees the "right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

"[W]hen it comes to the Fourth Amendment, the home is first among equals. At the

Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be

free from unreasonable governmental intrusion.'" *Fla. v. Jardines*, 569 U.S. 1, 6 (2013) (quoting

*Silverman v. United States*, 365 U.S. 505, 511 (1961)), Accordingly, "no Warrants shall issue,

but upon probable cause, supported by Oath or affirmation, and particularly describing the place

to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Any

governmental intrusion or search of a private area without a warrant supported by probable cause

is presumptively unreasonable. *See, e.g.*, *Groh v. Ramirez*, 540 U.S. 551, 559 (2004); *Payton v.

New York*, 540 U.S. 551, 559 (1980); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973).

 For a warrant to issue, a neutral and detached magistrate must make a "practical,

common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is

a fair probability that contraband or evidence of a crime will be found in a particular place."

*Illinois v. Gates*, 462 U.S. 213, 238 (1983); *see also United States v. Raymonda*, 780 F.3d 105,

113 (2d Cir. 2015). "When assessing whether a search warrant is supported by probable cause,

we ask whether the issuing judge had a 'substantial basis' for concluding that "a search would

uncover evidence of wrongdoing." *United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir.

2017) (quoting *Gates*, 462 U.S. at 239)).

 In recognition of the "vast quantities of personal information literally in the hands of

individuals" when a cell phone is seized, the Supreme Court extended the search warrant

requirement to searches of data on cell phones. *Riley v. California*, 573 U.S. 373, 386 (2014).

Four years ago, the Court extended its holding in *Riley* to historical cell site location information,

acknowledging, "a phone goes wherever its owner goes, conveying to the wireless carrier not

just dialed digits, but a detailed and comprehensive record of the person's movements."

*Carpenter v. United States*, 138 S. Ct. 2206, 2217 (2018).

## IV.    ARGUMENT

### A.    *The Court should suppress the materials seized pursuant to the August 5, 2022 historical cell site location information warrant.*

The Fourth Amendment's principles apply with particular force in the digital age, where large amounts of private information can be captured in an instant. On August 5, 2022, the magistrate court authorized the seizure of "a comprehensive chronical" of Mr. Disla Ramos's movements for five months. *Id.* at 2211. The broad warrant issued based on an affidavit that failed to establish probable cause that Mr. Disla Ramos participated in the offense and alleged probable cause for a search related to only one date: March 31, 2022. Because the historical cell site location information warrant did not assert a sufficient nexus between the information sought and the probable cause alleged, the seized evidence must be suppressed.

### 1.    The historical cell site information warrant did not establish a sufficient nexus between Moises Disla Ramos and the alleged criminal offenses.

In an investigation that turned on the identity of the individuals who committed the offense, the affidavit accompanying the historical cell site location information warrant displayed a "reckless disregard for the truth" by omitting material information about the identification of Moises Disla Ramos. *See Franks v. Delaware*, 438 U.S. 154, 154 (1978). Accordingly, all evidence seized pursuant to the historical cell site location information warrant must be suppressed.

On August 5, 2022, the magistrate court authorized the seizure of a "detailed, encyclopedic" chronicle of Mr. Disla Ramos's movements over the past five months. *Carpenter*, 138 S. Ct. at 2216. The affidavit in support of the warrant asserted that Mr. Disla Ramos participated in the March 31, 2022 robbery and his cell site location information would "provide the locations of [Mr. Disla Ramos] before, during, and after the robbery." Ex. B at

USAO_000058. Yet none of the individuals who witnessed the March 31, 2022 robbery identified the perpetrators of the offense. Nor did the individuals who were robbed. Video surveillance of the incident does not reveal the faces of the perpetrators. There is no detailed description of the individuals who robbed the complainants on March 31 and no forensic evidence tying anyone to the crime.

Relying on the complainants' vague description of the perpetrators' clothing and a comparison of video surveillance from the robbery and surveillance inside of ███████ ███████ on the same date, the government theorizes that at least one of the individuals who committed the offense is one of the individuals depicted in the ████████████ surveillance. The affidavit relies on an informant who identified the individual in the surveillance as a tenant in one of the apartments in the building, but not identify Mr. Disla Ramos by name. *Id.* at USAO_000054–000055. Nor does the affidavit include any information about the informant's basis of knowledge.

"The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Here, the affidavit neglected to include any information whatsoever about the informant upon which the magistrate court could have weighed the veracity and reliability of the informant's identification of the individual depicted in the surveillance. There is no indication of how the informant is familiar with the individual in the surveillance; the relationship between the informant and the individual in the surveillance; how long the informant has known the individual; when and where the informant has previously seen the individual.

12

Certainly, there was no "*substantial* basis for crediting the hearsay" as required; there was no

basis provided at all. *Id.* at 242 (emphasis added).

The informant's identification "is a mere conclusory statement that gives the magistrate

virtually no basis at all for making a judgment regarding probable cause." *Id.* at 239. As the

Supreme Court urges, "[s]ufficient information must be presented to the magistrate to allow that

official to determine probable cause; his action cannot be a mere ratification of the bare

conclusions of others." *Id.* ("In order to ensure that such an abdication of the magistrate's duty

does not occur, courts must continue to conscientiously review the sufficiency of affidavits on

which warrants are issued.").

Critically, the affidavit neglects to allege any other reliable information connecting Mr.

Disla Ramos to ███████████████ The affidavit did not reference any database, driver's

license record, utility bill, current lease agreement, or other official document connecting Mr.

Disla Ramos the address. In fact, the affidavit intentionally excluded information that would

have substantially weakened Mr. Disla Ramos's association with the building and in turn, the

offense.

In addition to relying on an informant without any stated basis of knowledge, the affiant

relied on "tenant records" from ███████████████ to boldly assert that they "know" Mr. Disla

Ramos resides in an apartment in the building. Ex. B at USAO_000054–000055. But the

affidavit deceptively neglects to disclose that the tenant records on which it relied were dated

November 12, 2020. Ex. D at USAO_005838. [3] "While there is no bright line rule for staleness,

the facts in an affidavit supporting a search warrant must be sufficiently close in time to the

---

[3] On October 5, 2022, the defense asked the government to disclose the tenant records referenced in the historical cell site warrant affidavit. On October 20, 2022, the government responded, "This was already produced to you at USAO_005830-005843."

issuance of the warrant and the subsequent search conducted so that probable cause can be said to exist as of the time of the search and not simply as of some time in the past." *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993). Here, the affidavit provided meager information that Mr. Disla Ramos lived in (or was associated with) the building at any time in 2022, let alone when the warrant issued in August. The exclusion of the date of the tenant records reviewed is not a simple "misstatement" "that is merely the result of simple negligence or inadvertence." *United States v. Davis*, 714 F.2d 896, 899 (9th Cir. 1983). It was reckless. The affidavit misled the court to believe the tenant records were current. They were not. And this was not the only material omission in the affidavit.

The affidavit also neglected to inform the issuing court that an individual other than Mr. Disla Ramos had been identified by NYPD facial recognition technology as the person in the surveillance video, and by extension, the perpetrator. Ex. E, USAO_005900. Law enforcement was aware of this information in April 2022—nearly four months before seeking the historical cell site location information warrant—when it received a "possible lead match." USAO_005785. Yet the affidavit, already short on information connecting Mr. Disla Ramos to the offense, included no reference to a potential alternative suspect.

Under *Franks v. Delaware*, a defendant is entitled to a hearing if he makes a "'substantial preliminary showing' that a deliberate falsehood or a statement made with reckless disregard for the truth was included in the warrant affidavit and the statement was necessary to the judge's finding of probable cause." *United States v. Falso,* 544 F.3d 110, 125 (2d Cir. 2008) (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). In addition to affirmative misstatements, *Franks* protects against misleading omissions. *See United States v. Awadallah*, 349 F.3d 42, 68 (2d Cir. 2003); *Rivera v. United States*, 928 F.2d 592, 604 (2d Cir. 1991); *United States v.*

*Levasseur*, 816 F.2d 37, 43 (2d Cir. 1987). An agent "recklessly disregards" the truth in the

*Franks* context when he or she "makes allegations while entertaining serious doubts about the[ir]

accuracy," *see United States v. Vilar*, 2007 WL 1075041, at *26 (S.D.N.Y. Apr. 4, 2007)

(collecting authorities), or while "aware of a high probability" that the allegations "might be

false." *Varnish v. Best Medium Pub. Co.*, 405 F.2d 608, 623 (2d Cir. 1968). If a search warrant is

void under *Franks*, the good-faith exception to the exclusionary rule does not apply. *See United*

*States v. Leon*, 468 U.S. 897, 923 (1984); *United States v. Reilly*, 76 F.3d 1271, 1280-81 (2d Cir.

l996).

       Given the slight information linking Mr. Disla Ramos to the offense charged, the glaring

omission of evidence that (1) another possible subject had been identified as the individual in the

surveillance based facial recognition technology; and (2) the tenant records on which it relied did

not in fact state that Mr. Disla Ramos lived at ███████████ ███████████ in 2022 or

when the warrant was issued, is "clearly critical to the probable cause determination." *Rivera v.*

*United States*, 928 F.2d 592, 604 (2d Cir. 1991) (internal quotation marks omitted). The

exclusion of this information was indisputably "'designed to mislead,' or … was 'made in

reckless disregard of whether [it] would mislead' the magistrate." *United States v. Rajaratnam*,

719 F.3d 139, 154 (2d Cir. 2013) (quoting *United States v. Awadallah*, 349 F.3d 42, 68 (2d Cir.

2003).

       That the agent acted with a reckless disregard for the truth is only bolstered by the fact

that the subsequent affidavit for the premises search warrant did not correct the omissions. *See*

*supra*, II.B.1. Taken together, the affidavits "suggest an intentional design to create an incorrect

or at least misleading impression" of the strength of the evidence connecting Mr. Disla Ramos to

the offense. *United States v. Harris*, 464 F.3d 733, 737 (7th Cir. 2006). Indeed, the intentional

omissions "drive in the same direction" of artificially buttressing probable cause to believe that Mr. Disla Ramos participated in the offense—an allegation necessary for the issuance of the warrants. *United States v. Lahey*, 967 F. Supp. 2d 698, 723 (S.D.N.Y. 2013) (Karas, J.). "[T]he Government committed a series of easily avoidable errors which, combined with the admittedly high risk of the harm that occurred here, amounted to reckless disregard for the truth." *United States v. Roman*, 311 F. Supp. 3d 427, 429 (D. Mass. 2018) (holding search warrant affidavit contained material misrepresentations and omissions).

"The ultimate inquiry is whether, after putting aside erroneous information and material omissions, 'there remains a residue of independent and lawful information sufficient to support probable cause.'" *United States v. Canfield*, 212 F.3d 713, 718 (2d Cir. 2000) (citing *United States v. Ferguson*, 758 F.2d 843, 849 (2d Cir. 1985)); *see also Rajaratnam*, 719 F.3d at 146. In this case, the answer is no. Removing this information from the search warrants as required under *Franks* would leave "a thin reed on which to base a search." *Lahey,* 967 F. Supp. 2d at 724. Disclosing the truth would have fatally weakened the warrant application. *Contra Rajaratnam*, 719 F.3d at 155. *See Lahey*, 967 F. Supp. 2d at 723.

The Court should suppress the evidence recovered pursuant to the historical cell site location information warrant.

\*       \*       \*

In the alternative, because Mr. Disla Ramos has made a "substantial preliminary showing" sufficient to require an evidentiary hearing, the Court should order a *Franks* hearing. *See, e.g., United States v. Koschtschuk*, 2011 WL 867569, at \*5 (W.D.N.Y. Mar. 10, 2011); *United States v. Benacquista*, 2009 WL 1651458, at \*7 (W.D.N.Y. June 8, 2009); *United States v. Westover*, 812 F. Supp. 38, 39 (D. Vt. 1993); *United States v. Castellanos,* 820 F. Supp. 80, 82

(S.D.N.Y. 1993). "Clear proof is not required [to obtain a *Franks* hearing]—for it is at the evidentiary hearing itself that the defendant, aided by live testimony and cross-examination, must prove actual recklessness or deliberate falsity." *United States v. Chesher*, 678 F.2d 1353, 1362 (9th Cir. 1982). A *Franks* hearing is required when there is "a strong likelihood" of the failure "to establish probable cause in the absence of the false material." *United States v. Padilla*, 986 F. Supp. 163, 168–69 (S.D.N.Y. 1997).

### 2. The historical cell site warrant was overbroad.

The historical cell site location information warrant authorized the government to "follow" Mr. Disla Ramos for five months "beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales." *Carpenter v. United States*, 138 S. Ct. 2206, 2218 (2018). It also permitted the government to track Mr. Disla Ramos's movements from August 5, 2022 until his arrest days later. This "comprehensive record" of Mr. Disla Ramos's "public movements" "reflects a wealth of detail about [his] familial, political, professional, religious, and sexual associations." *United States v. Jones*, 565 U.S. 400, 415 (2012) (Sotomayor, J., concurring). Yet the supporting affidavit asserted probable cause for only one day in one location: March 31, 2022 in the Bronx, when and where the robbery occurred. Because the five month period of the search was unanchored to the probable cause asserted in support of the warrant, the warrant was overbroad and the evidence seized must be suppressed.

While applications of the Fourth Amendment evolve with new technology, the principles that motivated its passage are timeless. "The chief evil that prompted the framing and adoption of the Fourth Amendment was the 'indiscriminate searches and seizures' conducted by the British 'under the authority of general warrants.'" *United States v. Galpin*, 720 F .3d 436, 445

(2d Cir. 2013) (internal citation omitted). General warrants allowed "wide-ranging exploratory searches," *Maryland v. Garrison*, 480 U.S. 79, 84 (1987), and gave the Government 'unbridled discretion to rummage at will among a person's private effects," *Arizona v. Gant*, 556 U.S. 332, 345 (2009). "Opposition to such searches was in fact one of the driving forces behind the Revolution itself." *Riley v. California*, 573 U.S. 373, 403 (2014).

When a warrant uses broad descriptions of the things to be seized, failing to limit those descriptions by dates available to the police will render the warrant overbroad. *E.g.*, *United States v. Ford*, 184 F.3d 566, 576 (6th Cir. 1999). Here, the historical cell site location information warrant sought location data for five months, from March 1, 2022—30 days before the offense was committed—through the date of the warrant, August 5, 2022, four months after any alleged criminal conduct. Yet the affidavit only alleges probable cause to seize information about Mr. Disla Ramos's whereabouts on one day: March 31, 2022, the day of the robbery. "[T]he authorization to search for evidence irrelevant to that time frame could well be described as 'rummaging.'" *United States v. Abboud*, 438 F.3d 554, 576 (6th Cir. 2006). While the affidavit concludes that Mr. Disla Ramos's historical cell site information will "provide the locations of [Mr. Disla Ramos] before, during, and after the robbery," the affidavit is completely devoid of any allegations of criminal activity on any date other than March 31, 2022, and fails to make clear the relevance of the expansive five-month search. Ex. B at USAO_000058.

In *United States v. Gaines*, in contrast, the court upheld a cell site location information warrant where the warrant authorized seizure of data and location records for a 14-day timeframe. No. 3:20CR126 (JBA), 2021 WL 4263375, at *6 (D. Conn. Sept. 20, 2021). In so holding, the court found the "temporal limit is sufficiently tied to the acts of the conspiracy for which Defendant is charged." *Id.* Such is not the case here.

To be sure, where the conduct alleged is "complex" and there are "numerous documents involved," courts do not require temporal limits on search warrants. *See, e.g. United States v. Hernandez*, No. 09 CR 625 (HB), 2010 WL 26544, at *10 (S.D.N.Y. Jan. 6, 2010) (noting that "an express time frame" would have been ideal); *United States v. Nejad*, 436 F. Supp. 3d 707, 729 (S.D.N.Y. 2020); *United States v. Ray*, 541 F. Supp. 3d 355, 397 (S.D.N.Y. 2021). However, "[a] warrant's failure to include a time limitation, where such limiting information is available and the warrant is otherwise wide-ranging, may render it insufficiently particular." *United States v. Zemlyansky*, 945 F. Supp. 2d 438, 459 (S.D.N.Y. 2013) (quoting *United States v. Costin,* No. 5 Cr. 38, 2006 WL 2522377, at *12 (D.Conn. July 31, 2006) (internal quotation marks omitted))). Where a search is for "a small set of discrete items related to one or only a few dates," such as here, temporal limits should be imposed. *Hernandez*, 2010 WL 26544, at *10.

Certainly, the instant offense is not alleged to be a complex scheme, nor is there any whiff of a suggestion that Mr. Disla Ramos "was engaged in a criminal course of conduct" extending beyond a single day. *Cf. Ray*, 541 F. Supp. 3d at 397 (finding temporal limits on cell site location information warrant unnecessary for conduct alleged to have spanned years). The seizure of five months of location data was simply unsupported by probable cause.

Because "[a]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be justified by the probable cause on which the warrant is based," the evidence should be suppressed. 2 LaFave, *Search and Seizure*, § 4.6(a) (4th ed. 2004).

*    *    *

Further, the Court should suppress all evidence that was obtained, directly or indirectly, as a result of the initial warrant. This includes the premises search warrant, which relied, in part,

19

on "prospective location information" to establish that Mr. Disla Ramos resided at ████████

███████ ██████████ Ex. C at USAO_005467. *See Wong Sun v. United States*, 371 U.S. 471,

484–85 (1963); *Young v. Conway*, 698 F.3d 69, 77 (2d Cir. 2012).

> **B.    The Court should suppress the materials seized pursuant to the August 9, 2022 premises search and electronic information warrant.**

"The 'chief evil' deterred by the Fourth Amendment is the physical invasion of the

home." *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016) (quoting *Payton v. New York*,

445 U.S. 573, 585 (1980)). Despite this, the warrant to search Mr. Disla Ramos's home for

evidence of a robbery that occurred more than four months earlier violated the core principles of

the Fourth Amendment. Accordingly, all evidence recovered pursuant to the premises search

warrant should be suppressed.

> **1.    The premises search warrant affidavit did not supply probable cause to believe evidence of the subject offenses would be found at ███████████ █████████**

To allege probable cause that evidence of a robbery that occurred in March 2022 would

be located at ████████████ ███████████ four months later, the affidavit in support of

the premises search warrant relied principally on two contentions. *First*, that Mr. Disla Ramos,

who the government asserts committed the offense, resides in the apartment. *Second*, the

affiant's sweeping statement, based on their "training and experience," that "individuals who

engage in robberies and firearms offenses often store items used to commit their robberies, such

as firearms, and the proceeds of their robberies, such as cash, in their residence." Ex. C at

USAO_005470. Because these broad generalizations are insufficient to support a probable cause

finding that evidence of the robbery could be found at Mr. Disla Ramos's home at the time of the

issuance of the warrant, the evidence seized therein must be suppressed.

"To establish probable cause to search a residence, two factual showings are necessary—first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." *United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983). In an attempt to satisfy this burden, the government dedicated many pages of the premises search affidavit to establishing that a robbery occurred in March 2022 and that Mr. Disla Ramos lives in ███████████  ██████████ and participated in the offense.

These allegations were necessary, but not sufficient, to secure the warrant to search Mr. Disla Ramos's home. "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). In contrast to an arrest warrant, a search warrant "is issued upon a showing of probable cause to believe that the legitimate object of a search is located in a particular place, and therefore safeguards an individual's interest in the privacy of his home and possessions against the unjustified intrusion of the police." *Steagald v. United States*, 451 U.S. 204, 212–13 (1981). *See also United States v. Griffith*, 867 F.3d 1265, 1271 (D.C. Cir. 2017). "[O]fficers seeking authority to search a person's home must do more than set out their basis for suspecting him of a crime." *Id.* at 1279. It is not enough, therefore, for the government to merely allege that a crime was committed and Mr. Disla Ramos, who purportedly committed the crime, lived at the address to be searched. The government must also establish an independent basis to believe that evidence of the crime would be found there.

In a nod to this principle, the affidavit included a single, generic assertion: that evidence of the robbery would be found in Mr. Disla Ramos's home because generally, people who commit robberies keep evidence of the crime at home. Ex. C at USAO_005470. Still, this is

insufficient. The four corners of the affidavit must establish, through "specific and concrete, not 'vague' or 'generalized'" assertions, the connection between the home to be searched and evidence of the offense charged. *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (internal citation omitted). Absent "sufficient facts demonstrating why the police officer expects to find evidence in the residence rather than in some other place," a search warrant should not issue. *Id.*

Here, there are no such facts. No documents connected Mr. Disla Ramos's home to the offense. No witnesses are alleged to have observed evidence of the robbery at the premises. The affidavit did not assert that Mr. Disla Ramos was observed entering ███████████ while possessing any contraband. In sum, the affidavit included no direct connection between Mr. Disla Ramos's home and the March 31 robbery to establish probable cause for the search.

In *United States v. Brown*, the Sixth Circuit ruled that "if the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer." 828 F.3d at 384 (suppressing evidence obtained pursuant to a search warrant). *See also United States v. Higgins*, 557 F.3d 381, 390 (6th Cir. 2009) (finding search warrant affidavit failed to establish nexus between "the place to be searched and the evidence sought"). Likewise, even if the Court finds the affidavit established probable cause to believe Mr. Disla Ramos committed the March 31, 2022 robbery, it cannot be automatically inferred based on the information provided that evidence of the crime would be found in his home four months later.

Even if the Court were to find that the affidavit need not present specific facts connecting March 2022 robbery with Mr. Disla Ramos's home to establish probable cause for the search—

and it should not—the passage of time between the commission of the offense and the issuance of the warrant further dampens the probable cause analysis.

"[T]he likelihood that incriminating evidence continues to exist in the place to be searched—taking into account 'the opportunities those involved in the crime would have had to remove or destroy [incriminating] items'—is an important consideration when assessing the existence of probable cause." *Griffith*, 867 F.3d at 1275. The premises search warrant authorized the seizure of tangible items such as firearms, ammunition, cash, and various items taken from the complainants. Ex. C at USAO_005482. There is every reason to believe that even assuming Mr. Disla Ramos committed the offense and at some point possessed these items, the likelihood of such evidence remaining in his home more than four months later is relatively slim. Indeed, the government will likely at some point argue that the fact that none of these items were recovered from Mr. Disla Ramos's home is not exculpatory, but rather a function of the passage of time between the offense and the execution of the search warrant. This reasoning only underscores the unreasonableness of the premises search. Given the low likelihood that evidence of a robbery would be found in Mr. Disla Ramos's home four months after the offense, the warrant should not have been issued.

Because the affidavit did not establish probable cause to believe evidence of the March 2022 robbery would be found in Mr. Disla Ramos's home four months later, the materials recovered pursuant to the search warrant must be suppressed.

**2.    The premises search warrant affidavit did not supply probable cause to seize all electronic devices found inside of ▮▮▮▮▮▮**

Similarly, probable cause to issue a warrant for electronic information must rely on case-specific facts that suggest electronic data will reveal evidence of the subject offenses, not general

assertions that would equally apply to any and all such crimes. *See, e.g.*, *United States v. Lyles*, 910 F.3d 787, 794–95 (4th Cir. 2018). Yet the warrant to search Mr. Disla Ramos's home blesses the seizure of "any cellphones and storage media that may contain any electronically stored information" for evidence of the offense absent a shred of information about why the government expected to find evidence of the March 31, 2022 robbery on a specific electronic device, let alone *any* device. Ex. C at USAO_005484. The warrant was both overbroad and insufficiently particularized to support the seizure.

"To justify a search of [an] apartment to seize any cell phone owned by" an individual suspected of a crime, "police needed reason to think not only that he possessed a phone, but also that the device would be located in the home and would contain incriminating evidence about his suspected offense." *Griffith*, 867 F.3d at 1273. Certainly, by the time the warrant issued, the police were aware that Mr. Disla Ramos owned a cell phone—they had been tracking his movement for days. But "[b]ecause a cell phone, unlike drugs or other contraband, is not inherently illegal, there must be reason to believe that a phone may contain evidence of the crime" in order for a warrant to issue. *Id.* at 1274. "[I]t is not enough that the object of the search *may* be found" in a cell phone. *Com. v. Broom*, 474 Mass. 486, 495–96 (2016) (emphasis in original). "Rather, the affidavit must demonstrate that there is a reasonable expectation that the items sought *will* be located in the particular data file or other specifically identified electronic location that is to be searched." *Id.* at 496 (emphasis in original).

Here, the affidavit connects electronic devices to the offense in two ways. *First*, it asserts that cell phones were taken from the complainants in the course of the robbery. And *second*, it alleges that Mr. Disla Ramos communicated by phone with an alleged co-conspirator, Jerinson Rosario, "approximately one hour" after the robbery. Ex. C at USAO_005469–005470. These

allegations are insufficient to support a seizure of all electronic devices in Mr. Disla Ramos's home.

Turning first to the cell phones taken from the complainants, the warrant was insufficiently particularized to support seizure of these devices. The Second Circuit has "emphasized that '[a] failure to describe the items to be seized with as much particularity as the circumstances reasonably allow offends the Fourth Amendment because there is no assurance that the permitted invasion of a suspect's privacy and property are no more than absolutely necessary.'" *United States v. Galpin*, 720 F.3d 436, 446 (2d Cir. 2013) (quoting *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992)). Two days after the robbery, law enforcement learned the model—a 64 gigabyte iPhone 12 and a Samsung cell phone—and the International Mobile Equipment Identity (IMEI) serial number for each of the complainants' phones. USAO_005713. Yet these details were not included in the search warrant. Instead, the warrant blessed the whole cloth taking of any and all electronic devices found within Mr. Disla Ramos's home. The Fourth Amendment demands more. "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *In re 650 Fifth Ave. & Related Properties*, 830 F.3d 66, 99 (2d Cir. 2016) (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987) (internal quotation marks omitted)).

*Wheeler v. City of Lansing* is analogous to the instant matter. 660 F.3d 931 (6th Cir. 2011). In *Wheeler*, the Sixth Circuit deliberated over a warrant to search the defendant's apartment for stolen property. While the "officers had additional information about the stolen items to be seized that they could have included in the warrant," the warrant "provid[ed] no basis

to distinguish the stolen items from [the defendant's] own personal property." *Id.* at 941. "For example, the warrant referred to one category of items to be seized as "cameras," yet the police reports describe the types of cameras stolen in the home invasions by brand." *Id.* Finding the warrant overbroad, the court held that "it would be apparent to a reasonable officer that listing general categories of items to be seized even though further details are available violates the Fourth Amendment's specificity requirement." *Id.* at 942.

Cell phones, like cameras, are "'common' property that greater detail, when available as it was here, should be used to identify." *Id.* at 941. In this case, for months, law enforcement knew the precise description of the cell phones that had been taken in the robbery, right down to their serial numbers. Yet in August 2022 when the government sought a warrant to seize (in part) those very phones, it did not include any of the particularized information at its fingertips. This lack of particularity offends the Fourth Amendment and demands suppression of the seized evidence. *See United States v. Zemlyansky*, 945 F. Supp. 2d 438, 457–61 (S.D.N.Y. 2013).

Next we turn to the allegation that Mr. Disla Ramos communicated with an alleged co-conspirator one hour after the offense. Even assuming, *arguendo*, that this fact alone was sufficient to authorize the search and seizure of Mr. Disla Ramos's cell phone—it wasn't—the fact that Mr. Disla Ramos communicated with Mr. Rosario at some time after the robbery does not rise to the level of probable cause to believe evidence of the offense would be found on Mr. Disla Ramos's phone. And it certainly does not establish probable cause to believe *any* electronic device found within Mr. Disla Ramos's home would contain evidence of the robbery.

To begin, there is no explanation of whether the phone Mr. Disla Ramos used to communicate with Mr. Rosario four months prior "might be in his home," and no case-specific information about "whether any [electronic device found in Mr. Disla Ramos's home] would

retain any incriminating information about" a robbery that occurred four months earlier. *United States v. Griffith*, 867 F.3d 1265, 1272, 1278 (D.C. Cir. 2017). The affidavit provides no reason to assume that Mr. Disla Ramos even possessed any electronic devices apart from a cell phone.

Instead, the affidavit again leans on the affiant's "training and experience," which tells him "individuals who engage in coordinated robberies commonly use cellphone[s] to communicate with co-conspirators and keep track of co-conspirators' information." Ex. C at USAO_005470. This "unadorned, bare bones claim" is a woefully insufficient factual basis to support probable cause. *Burns v. United States*, 235 A.3d 758, 772 (D.C. 2020). In fact, the affiant's assertions are belied by the evidence in this case: After a review of Mr. Disla Ramos's subpoenaed phone records, the government identified only one communication between Mr. Disla Ramos and an alleged co-conspirator in support of its attempt to establish probable cause that any electronic device recovered within Mr. Disla Ramos's home would have evidence of the robbery. This one-sentence assertion is a far cry from establishing that Mr. Disla Ramos's cell phone is an instrumentality of the offense, let alone authorize a search and seizure of any electronic devices found within the home.

To be sure, courts have upheld electronic search warrants even with a thin factual nexus. But there must be some connection alleged within the four corners of the affidavit between the offense committed and the device to be searched. In *United States v. Harvey*, for instance, the court ruled that "the fact that Harvey was recorded using a cellphone *moments after* the March 15, 2021, attempted robbery and shooting establishes the evidentiary nexus between his cellphone and criminal activity." No. 21-CR-335 (SJ), 2022 WL 684050, at *8 (E.D.N.Y. Mar. 8, 2022) (emphasis added). In *United States v. Robinson*, the court acknowledged that while the warrant affidavit "lack[ed] facts directly alleging that the Defendant used [a particular cell

phone] in connection with the crime," law enforcement's discovery of the phone at "the scene of the crime creates a sufficient factual nexus to justify the search." No. 16-CR-545 (S-3)(ADS), 2018 WL 5928120, at *16 (E.D.N.Y. Nov. 13, 2018).

Here, there are no such allegations. Instead, the government relies almost exclusively on the affiant's "training and experience" to establish a nexus between the subject offenses and the devices to be searched and seized. That evidence of a crime is often found on electronic devices, as the affidavit contends, does not supply probable cause to believe that it will be found in any electronic devices recovered in this particular case. Where, as here, a search warrant authorizes the seizure of "*all* cell phones and electronic devices, without regard to ownership," which "outstripped the police's proffered justification for entering the home," the warrant is overbroad and the evidence must be suppressed. *Griffith*, 867 F.3d at 1276 (emphasis in original).

### 3.    The search and seizure of "electronically stored information" authorized by the premises search warrant is overbroad.

The face of the premises search warrant authorizes the seizure of "any cellphones and storage media that may contain any electronically stored information" found within Mr. Disla Ramos's home. Ex. C at USAO_005484. Per the terms of the warrant, "law enforcement personnel are authorized to conduct a complete review of all the ESI from seized devices or storage media if necessary to evaluate its contents and to locate all data responsive to the warrant," with no temporal restrictions. *Id.* at USAO_005485. "This case, in short, involves the prospect of an especially invasive search of an especially protected place." *Griffith*, 867 F.3d at 1272. The over breadth of the warrant demands that the materials seized from electronic devices recovered in Mr. Disla Ramos's home be suppressed.

Searches of digital data "implicate privacy concerns far beyond those implicated by the search" of a physical home. *Riley v. California*, 573 U.S. 373, 393 (2014). The data stored on a

cell phone is "qualitatively different" than a search for physical records. *Id.* at 396. Indeed, "a cell phone search would typically expose to the government far more than the most exhaustive search of a house: A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form—unless the phone is." *Id.* at 396–97.

"The sheer volume of data that may be stored on an electronic device…raises a significant likelihood that much of the data on the device that has been seized will be deeply personal and have nothing to do with the investigation of criminal activity." *United States v. Smith*, 967 F.3d 198, 207 (2d Cir. 2020) (internal citation omitted). *See also United States v. Gaines*, No. 3:20CR126 (JBA), 2021 WL 4263375, at *5 (D. Conn. Sept. 20, 2021). "An Internet search and browsing history, for example, can be found on an Internet-enabled phone and could reveal an individual's private interests or concerns—perhaps a search for certain symptoms of disease, coupled with frequent visits to WebMD." *Riley*, 573 U.S. at 395–96. In light of the "serious risk that every warrant for electronic information will become, in effect, a general warrant, rendering the Fourth Amendment irrelevant," digital searches require a "heightened sensitivity" to constitutional concerns. *United States v. Galpin*, 720 F .3d 436, 447 (2d Cir. 2013) (citation and quotation marks omitted).

A warrant for electronic data, therefore, like all warrants, must be limited to the probable cause upon which the warrant issues. "[A] warrant is overbroad if its description of the objects to be seized…is broader than can be justified by the probable cause upon which the warrant is based." *United States v. Wey*, 256 F. Supp. 3d 355, 382 (S.D.N.Y. 2017) (quoting *United States v. Lustyik*, 57 F.Supp.3d 213, 228 (S.D.N.Y. 2014) (internal quotation marks omitted))).

Here, the affidavit in support of the premises search warrant sets forth no probable cause for the subject offenses on any date other than March 31, 2022. The affidavit did not allege that the robbery was an ongoing conspiracy, nor that any planning or coordination preceded the date of the offense itself. There are no allegations of criminality before or after the March 31, 2022 robbery, and no assertions that Mr. Disla Ramos communicated with any alleged conspirators on any other date, let alone that those communications were about the offense.[4] And there is no indication that Mr. Disla Ramos used or possessed any electronic devices in any moment leading up to or during the commission of the offense, let alone that such a device would have evidence pertaining to the offense charged.

Despite this, the magistrate court authorized a limitless search and seizure of Mr. Disla Ramos's private cell phone data to mine for information related to a single day. Such an invasive search cannot stand. Because the warrant authorized a seizure of evidence beyond that supported by the probable cause set forth in the affidavit, the warrant is overbroad. *United States v. Lebowitz*, 647 F.Supp.2d 1336, 1351 (N.D. Ga. 2009); *United States v. Rubinstein*, 2010 WL 2723186 at *8 (S.D. Fla. June 24, 2010). *See also United States v. Vilar*, No. S305CR621KMK, 2007 WL 1075041, at *23 (S.D.N.Y. Apr. 4, 2007) (noting that a warrant's "patent lack of particularity is only compounded by the absence of any date restriction on the items to be seized").

Also troubling is the lack of limitation on even the data that would be considered responsive to the warrant. While the warrant authorizes a limitless search of all electronic devices for evidence related to the robbery, the warrant suggests that *any* communications

---

[4] At most, the affidavit establishes two relevant dates. Video surveillance shows an individual law enforcement believes to be Mr. Disla Ramos with an individual law enforcement believes to be Mr. Rosario in the early morning hours of April 1, 2022.

between alleged coconspirators and *any* photographs of Mr. Disla Ramos with the alleged coconspirators amounts to evidence responsive to the warrant. Ex. C at USAO_005483. This cannot be so. Some limiting principle should have been imposed to prevent a search of old or embarrassing photographs or private conversations that have nothing to do with the offenses charged.

For these reasons, the resulting evidence must be suppressed.

### 4. The government's search of the electronic device seized from the premises was unreasonable.

"[T]hrough the[ ] creation of the dual constitutional mandates of probable cause and particularity, the words of the Warrant Clause are meant to deny police the ability 'to rummage at will' through a person's private matters." *Burns v. United States*, 235 A.3d 758, 771 (D.C. 2020). Yet without asserting any probable cause to believe that electronic devices other than cell phones may be found at Mr. Disla Ramos's home, and absent specific allegations about why any such devices would have on them evidence of the of the March 31, 2022 robbery, the government executed a premises search warrant that permitted the search and seizure of *any* electronic device recovered. After its initial seizure of all electronic information, the government was required to process that data to identify, and finally seize, only data within the scope of the warrants. Ex. C at USAO_005483–005485. *See* Fed. R. Crim. P. 41(e)(2)(B). Here, however, the warrant specified no keywords or other limitation to cabin the government's search of the electronic data. Indeed, the warrant allows a review in any manner the government sees fit, including by "survey[ing]" all files, and opening or "cursorily read [ ]" each file. Ex. C at USAO_005485.

This type of unlimited search, allowing the government to review everything without any effort to simply look for documents relevant to the asserted probable cause during the execution

of the search, permitted seizure of items outside the scope authorized by a search warrant and is

unconstitutional. *See United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1177

(9th Cir. 2010) ("*CDT*") (en banc) ("The process of segregating electronic data that is seizable

from that which is not must not become a vehicle for the government to gain access to data

which it has no probable cause to collect.") (*overruled in part on other grounds*, *Demaree v.

Pederson*, 887 F.3d 870, 876 (9th Cir. 2018)).

### C.   Suppression is necessary to deter government misconduct.

"[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness[.]'" *Brigham

City v. Stuart*, 547 U.S. 398, 403 (2006). This governs both the Fourth Amendment analysis and

the acceptable execution of a search warrant. *United States v. Ramirez*, 523 U.S. 65, 71 (1998).

No reasonable law enforcement agent can rely upon unparticularized and overbroad warrants,

which lack a sufficient nexus between the asserted probable cause and the areas to be searched.

*Cf. United States v. Leon,* 468 U.S. 897 (1984). Instead, search and seizure pursuant to an

obviously deficient warrant is, like a warrantless search and seizure, presumptively unreasonable.

*Groh v. Ramirez*, 540 U.S. 551, 558–59 (2004); *see also Coolidge v. New Hampshire,* 403 U.S.

443, 469 (1971).

Therefore, suppression is warranted here. The "government agents effect[ed] a

widespread seizure of items that were not within the scope of the warrant, and [did] not act in

good faith." *United States v. Wey*, 256 F.Supp.3d 355, 410 (S.D.N.Y. 2017) (internal citation and

quotation marks omitted). "The rationale for blanket suppression is that a search that greatly

exceeds the bounds of a warrant and is not conducted in good faith is essentially

indistinguishable from a general search." *United States v. Shi Yan Liu*, 239 F.3d 138, 141 (2d

Cir. 2000). *Accord Cardwell*, 680 F.2d at 78–79; *United States v. Medlin*, 842 F.2d 1194, 1199

(10th Cir. 1988). The government's actions in seizing and searching such a large volume of unresponsive material demonstrates "grossly negligent or reckless disregard of the strictures of the Fourth Amendment, and that is sufficient to infer a lack of good faith…. These are precisely the sort of circumstances, rare or not, that call for blanket suppression." *Wey*, 256 F.Supp.3d at 410. This is particularly true given the other grave problems with the search warrants, including the lack of basis of knowledge of the informant; the use of dated tenant records to suggest that Mr. Disla Ramos was known to reside at ██████████ at the time the warrant was issued; the intentional omission of an alternate possible suspect; and the lack of nexus between much of the information seized and the probable cause asserted.

Alternatively, this Court should hold an evidentiary hearing to determine, *inter alia*: (1) how the executing agents determined what to seize; (2) how law enforcement conducted their responsiveness review; (3) how the electronic information was collected and processed prior to review; (4) if and how any keywords were subsequently chosen; and, (5) the results of each keyword search. Other courts confronting similar issues have concluded that an evidentiary hearing was required. *See, e.g.*, *id.* at 366; *United States v. Ganias*, 824 F.3d 199, 207–08 (2d. Cir. 2016). This Court should do the same.

## V.      CONCLUSION

For the above-stated reasons, his Court should suppress the evidence recovered pursuant to the search warrants in whole or in part. In the alternative, the Court should conduct an evidentiary hearing.


Dated:  New York, New York
        October 24, 2022

                                    Respectfully submitted,

                                    FEDERAL DEFENDERS OF NEW YORK, INC.


                                    By: _____/s/_____
                                        **MARNE L. LENOX**
                                        **KRISTOFF WILLIAMS**

                                    Attorneys for Defendant
                                        **Moises Disla Ramos**
                                    52 Duane Street – 10th Floor
                                    New York, New York 10007
                                    Tel.: (212) 417-8700