USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/28/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
UNITED STATES OF AMERICA,                       :            22-cr-431 (LJL)

    -v-                                                                      :            MEMORANDUM AND
                                                                                           ORDER
MOISES DISLA RAMOS,                              :

                     Defendant.              :
------------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

        Defendant Moises Disla Ramos ("Disla" or "Defendant") is charged, in a three-count superseding indictment, with (1) Hobbs Act robbery on March 31, 2022, in violation of 18 U.S.C. §§ 1951, 2; (2) conspiracy to commit Hobbs Act robbery from March 2022 to March 2022 through July 2022, in violation of 18 U.S.C. § 1951; and (3) possession and use of a firearm in connection with the Hobbs Act robbery, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A)(i), (ii), and (iii). Dkt. No. 75. The Government has indicated that it intends to prove that Disla and his co-conspirators, including Jerinson Rosario and Carlos Hidalgo Rosario (known as "Safi"), committed an armed robbery on March 31, 2022, when they lured two victims to a location in the Bronx, New York with the promise that they would sell the victims a used automobile, and then took their cash at gunpoint. During the robbery, one of the victims ("Victim 1") was shot in the leg. As to the conspiracy to commit Hobbs Act robbery, the Government also has indicated that it intends to prove that the three co-conspirators and one other individual engaged in a conspiracy to commit armed robberies by attracting their victims with offers made on Facebook Marketplace to sell used cars and then robbing the victims. In order to conceal their identities from law enforcement, the co-conspirators allegedly affixed a

temporary New Jersey license plate registered in the name of another individual. The principal issue for trial is identity. Trial is scheduled to begin on January 8, 2024. Both sides have made motions *in limine*. Dkt. Nos. 84, 86. The Court reserves decision on the Government's motion to admit the out-of-court statement of Victim 2. In all other respects, the Government's motions are granted and the defendant's motions are denied.

### A. Victim 1's 911 Phone Call and Video Footage of Victim 1

The Government moves the Court to admit evidence of a 911 call by an onlooker during and immediately after the March 31 robbery, as well as statements made by Victims 1 and 2 captured on New York Police Department ("NYPD") body-worn cameras, as present sense impressions and excited utterances. The defense does not object to the admission of the 911 call, but it does object to the victims' statements captured on responding police officers' body cameras. The Court grants the Government's motion as to the 911 call and the statements made by Victim 1 that were made on camera.

The 911 call is admissible under both the present sentence impressions and the excited utterance exceptions to hearsay. The 911 call takes place as the robbery is occurring and in the immediate aftermath. In it, the caller describes the robbery and implores the dispatcher to "send somebody real quick" because a victim had been shot. He also implores the dispatcher to send an ambulance. In response to the dispatcher's questions, the caller indicates the direction in which he saw the robbers run. The caller's statements in the phone call fall squarely within the meaning of a present sense impression as they "describe[e] or explain[] an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Fed. R. Evid. 803(1). To qualify as a present sense impression, (1) the statement must describe the event perceived; (2) the declarant must have in fact perceived the event described; and (3) the

description must be substantially contemporaneous with the event in question. *United States v. Smothers*, 652 F. Supp. 3d 271, 293 (E.D.N.Y. 2023). The call described the events then occurring and made while the crime was occurring and as the assailants were fleeing the scene. "Such statements are considered to be trustworthy because the contemporaneity of the event and its description limits the possibility for intentional deception or failure of memory." *United States v. Jones*, 299 F.3d 103, 112 (2d Cir. 2002). Because here the call describes the events perceived as the declarant is perceiving them firsthand and in real time, the call constitutes a present sense impression. *See, e.g.*, *Carr v. Fischer*, 283 F. Supp. 2d 816, 837 (E.D.N.Y. 2003); *United States v. Urena*, 989 F. Supp. 2d 253, 260 (S.D.N.Y. 2013).

Both the onlooker's 911 call and Victim 1's statements made in the aftermath of the robbery are admissible under the excited utterance exception to hearsay as "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). In the video footage, which was recorded while Victim 1 was in the ambulance following the shooting, Victim 1 described the characteristics of his assailants. There is no dispute that the robbery and shooting were startling events and that the statements at issue were made under the stress of that startling event and relate to the startling event. *See, e.g.*, *United States v. Tocco*, 135 F.3d 116, 127 (2d Cir. 1998); *DeJesus v. Noeth*, 2019 WL 1459043, at *4 n.2 (E.D.N.Y. Apr. 2, 2019). "[T]he excited utterance exception is based on the psychological impact of the event itself, and permits admission of a broader range of hearsay statements" than the present sense impression exception, including "those that 'relate to' the event." *United States v. Jones*, 299 F.3d 103, 112 n.3 (2d Cir. 2002). "Therefore, unlike a present sense impression, '[a]n excited utterance need not be contemporaneous with the startling event to be admissible under Rule 803(2).'" *United States v. Spencer*, 2023 WL 5091827, at *2

(2d Cir. Aug. 9, 2023) (summary order) (quoting *Tocco*, 135 F.3d at 127).  The footage, which reflects Victim 1's statements in the minutes after the robbery, qualifies as an excited utterance. *See, e.g.*, *United States v. Steele*, 216 F. Supp. 3d 317, 322–23 (S.D.N.Y. 2016) (several minute delay); *United States v. Delvi*, 275 F. Supp. 2d 412, 415–16 (S.D.N.Y. 2003) (forty minute delay); *United States v. Puguero*, 2020 WL 5913309, at *4 (S.D.N.Y. Oct. 6, 2020) (twenty minute delay); *see also Tocco*, 135 F.3d at 127 (affirming the admission of an excited utterance made three hours after startling information); *United States v. Scarpa*, 913 F.2d 993, 1017 (2d. Cir. 1990) (affirming admission of excited utterance made five or six hours after startling event).

Moreover, the statements are non-testimonial under the Sixth Amendment because they were "made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Davis v. Washington*, 547 U.S. 813, 822 (2006); *see, e.g.*, *Smith v. New York*, 2023 WL 359568, at *21 (S.D.N.Y. Jan. 20, 2023) (calls were made in the immediate aftermath of a fatal shooting for the purpose of rendering emergency assistance to the victim); *Rivera v. Collado*, 2021 WL 603047, at *11 (S.D.N.Y. Feb. 16, 2021) (call made promptly after slashing attack); *United States v. Scott*, 2014 WL 6765960, at *2 (S.D.N.Y. Nov. 28, 2014) (call made while defendant was walking around housing complex with a firearm); *Rodriguez v. Lee*, 2011 WL 1362116, at *8 (S.D.N.Y. Feb. 22, 2011) (call made during ongoing chase in immediate aftermath of robbery).  Accordingly, the admission of the onlooker's phone call to 911 and Victim 1's statements captured on body camera video do not raise Sixth Amendment Confrontation Clause issues.

The defense does not dispute that the statements made by Victim 1 also fall within the hearsay exceptions for excited utterances.  It argues, however, that the statements should be

excluded as unfairly prejudicial under Rule 403 because, in the body camera footage where Victim 1 gives the description of his assailants, he can be seen writhing in pain in an ambulance, and because Victim 1 will testify at trial. That argument is without merit. The video has clear probative value. That Victim 1 made the statements in the immediate aftermath of the shooting and while being treated tends to undermine any notion that he had a motive to fabricate and tends to support the credibility of his identification. It also helps to tell part of the story of the crime and provide context. *See, e.g.*, *United States v. Mostafa*, 16 F. Supp. 3d 236, 256 (S.D.N.Y. 2014) (considering whether the evidence "is useful to complete the story of the crime charged"). And the probative value of the video is not substantially outweighed by the danger of unfair prejudice to Defendant. The Supreme Court has observed that "[t]he term 'unfair prejudice'…speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). The video clip, which is not particularly graphic, does not pose any such risk. *See, e.g.*, *United States v. Salameh*, 152 F.3d 88, 122 (2d Cir. 1998) (considering how depictive or vivid the evidence is in assessing validity of 403 claim). It shows Victim 1 in pain and his leg being treated by emergency medical services. And the simple fact that a victim is in significant pain is not particularly prejudicial, as pain is a readily inferable consequence of being shot. There is thus little, if any risk, that admission of the video will cause any unfair prejudice.

### B. Victim 2's Statements

The defense objects to the receipt in evidence of the statements by Victim 2 on the grounds that they do not fall within any applicable hearsay exception. The Court reserves decision on this issue pending argument at the final pretrial conference.

**C. Defendant's Prior Arrest**

The Government also moves for admission of evidence regarding Defendant's August 7, 2022 arrest. Dkt. No. 84 at 15–18. The defense objects to receipt of that evidence under Rules 403 and 404(b). Dkt. No. 87 at 4–10. On August 7, 2022, law enforcement officers approached Disla sitting in the driver's seat of a black 2008 Honda Accord with a temporary New Jersey license plate. When the officers ran the temporary New Jersey license plate, they discovered that it was registered in the name of someone other than the Defendant or any of the passengers in the vehicle, and that it was registered to a white 2019 Mercedes Benz. The Government submits that the car seized during the August 7, 2022 arrest is identical to the 2008 Honda used in the course of the March 31 charged robbery. Moreover, when the Defendant was subsequently arrested, one officer's body worn cameras captured Defendant wearing light blue jeans with a large white flap covering the right rear pocket. The Government submits that the jeans resemble the same jeans that one of the co-conspirators who participated in the March 31 robbery wore.

The Government argues that the evidence relating to Disla's August 7, 2022 arrest is either admissible as "direct evidence" of the charged crimes or, in the alternative, admissible as consistent with 404(b). The evidence is admissible both as direct evidence of the conspiracy and under Rule 404(b). Rule 404(b) governs the admission of evidence that does not go directly to the offenses charged, and bars such evidence from being introduced for the sole purpose of showing the defendant's bad character or "propensity" while permitting its admission to show, *inter alia*, the defendant's opportunity, knowledge, identity, or *modus operandi*. *See* Fed. R. Evid. 404(b). The Second Circuit has articulated two exceptions, under which admission of evidence of uncharged criminal activity is not considered other-crimes evidence subject to Rule 404(b)'s limits: (1) if a defendant is indicted on a conspiracy charge, "[a]n act that is alleged to

have been done in furtherance of the alleged conspiracy" is considered "part of the very act charged" rather than other-act evidence, such that "uncharged acts may be admissible as direct evidence of the conspiracy itself," *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999); or (2) if the uncharged criminal activity "arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial,"[1] *United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989) (alterations omitted) (quoting *United States v. Weeks*, 716 F.2d 830, 832 (11th Cir. 1983)).

The Government argues that the evidence is admissible under the first exception, that the evidence reflects an act that was done in furtherance of the alleged conspiracy. The Court agrees. There is evidence that would link the black 2008 Honda Accord to the vehicle used as an instrumentality of the March 31, 2022 robbery. The New Jersey temporary license plate in the name of another links Disla to the March 31, 2022 crime, in which a New Jersey temporary license plate was also used.

Under the Second Circuit's "inclusionary approach" to other-act evidence, such "evidence is admissible unless it is introduced for the *sole* purpose of showing the defendant's bad character, or unless it is overly prejudicial under [Rule] 403 or not relevant under [Rule] 402]." *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996). The use of a mis-registered New Jersey temporary license plate, which Defendant also allegedly used in carrying out the March 31 robbery, establishes Disla's *modus operandi*. *See, e.g.*, *United States v. Speed*, 272 F.

---

[1] Other Circuits have, however, cautioned against this exception to Rule 404(b). *See, e.g., United States v. Green,* 617 F.3d 233, 248 (3d Cir. 2010) ("[T]he inextricably intertwined test is vague, overbroad, and prone to abuse, and we cannot ignore the danger it poses to the vitality of Rule 404(b).").

App'x 88, 92 (2d Cir. 2008) (summary order) (finding *modus operandi* evidence properly admitted based on "us[e of] a ski mask, and wearing dark clothes and gloves"); *see also United States v. Barrett*, 750 F. App'x 19, 23 (2d Cir. 2018) (summary order) (affirming the admission of evidence to show defendant's "identity, as revealed by the robbery crew's *modus operandi*, whereby [the defendant] used [a specific car] to serve as a getaway driver for armed robberies involving masks and guns"). The evidence may also go to Defendant's identity. Under Circuit law, identity evidence can only be admitted under 404(b) if identity is actually disputed by the defendant or at issue. *United States v. Scott*, 677 F.3d 72, 80 (2d Cir. 2012). Here, it is, and thus identity is a proper purpose for which the arrest and related evidence can be admitted. The body camera footage showing Defendant wearing the same or similar clothing that the assailant wore the night of the March 31 robbery, and the arrest itself, both go to the Defendant's identity.

The probative value of the evidence far outweighs any risk of unfair prejudice or that the jury will take the evidence as propensity evidence. The evidence of the arrest involved conduct similar to the conduct with which Disla is charged, rendering it highly probative. *See, e.g.*, *United States v. Morgan*, 786 F.3d 227, 232 (2d Cir. 2015) (considering the similarity of the uncharged offense to the charged offense). And the risk of prejudice that the evidence, which is not highly inflammatory, poses, is not particularly high. *See, e.g.*, *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999) (rejecting a Rule 403 challenge where evidence "did not involve conduct more inflammatory than the charged crime"); *United States v. Abu-Jihaad*, 630 F.3d 102, 133 (2d Cir. 2010) (considering whether the uncharged acts were "especially worse or [more] shocking than the transactions charged"). The jury need not be told what Disla was arrested for on August 7, 2022, or whether it was for a crime other than the March 31, 2022

robbery and the conspiracy to commit robbery for which he is standing trial. The evidence is not that of a prior crime or a similar crime but of the crimes for which Disla is standing trial.

### D. Text Message Evidence

The defense objects to the receipt in evidence of several group text messages between Disla, Rosario, and an individual identified as Safi in which the individuals discuss robberies being made by posting advertisements for a used car on Facebook Marketplace to lure victims. Dkt. No. 87 at 2–3; Dkt. No. 98 at 9–14.[2] The evidence includes a May 2022 Facebook Marketplace advertisement with a surrounding text-message discussion in which Rosario and Safi discuss Rosario's posting of the same vehicle that was advertised on March 21, 2022 to lure the Victims. In the July 2022 group chat, Disla and his co-conspirators discuss a robbery using a 2022 vehicle with temporary license plates registered under a different name. The evidence is relevant to establishing Disla's identity as one of the individuals who committed the March 31, 2022 robbery as well as his participation in the conspiracy to commit the robberies. The evidence ties Disla to Rosario and Safi. The jury could find that the car in the Facebook Marketplace advertisement in May 2022 was the same car used to commit the robbery on March 31, 2022. The evidence ties Rosario and Safi to that car and, because there is extensive other evidence that ties Disla to Rosario and Safi, the evidence thus also tends to tie Disla to the March 31, 2022 robbery. The July 31, 2022 group message is direct evidence of Disla's agreement with Rosario and Safi to commit robberies as well as evidence that ties him to the March 31, 2022

---

[2] The defense frames its argument as that the Government should be precluded from presenting evidence that Disla and others committed uncharged robberies from March 2022 to July 2022, on the grounds that there is no evidence that such robberies occurred. Dkt. No. 87 at 2–3. The Government has since made clear that it does not intend to prove up evidence of robberies other than the charged March 31, 2022 robbery.

robbery. The defense objects to the receipt in evidence of the messages on the grounds that there is no "evidence that a robbery (or robberies) even happened." But there is no dispute that a robbery took place on March 31, 2022, and, in any event, there need not be evidence of a consummated robbery for an individual to be found guilty of engaging in a conspiracy to commit Hobbs Act robbery. *See, e.g.*, *United States v. Gonzales*, 441 F. App'x 31 (2d Cir. 2011) (summary order).

### E. Expert Witnesses

Finally, the defense moves for an order precluding the Government's expert cell site witness, Andrew Petersohn, and the Government's expert Spanish interpreter, Elizabeth Iliakostas, on grounds that the Government's expert notice is deficient under Federal Rule of Criminal Procedure 16(a)(1)(G)(iii) and that Petersohn's exhibits are confusing and misleading. Rule 16(a)(1)(G)(iii) requires that the Government make disclosure of its experts before trial and that the disclosure for each expert witness contain "a complaint statement of all opinions that the government will elicit from the witness in its case-in-chief . . . ; the bases and reasons for them; the witness's qualifications, including a list of all publications authored in the previous 10 years; and a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition." Fed. R. Crim. P. 16(a)(1)(G)(iii). Disla argues that Petersohn's expert notice—which was provided one month before the deadline for such disclosures—is deficient because it provides no details regarding the expert's opinion about the likely proximity of the cell phones he examined to the cell sites they are connected to or the bases and reasons for his opinions. Dkt. No. 87 at 10–11. Disla acknowledges that the Government produced a demonstrative exhibit with its expert disclosure that plots the general locations of the two cell phones, but argues that the exhibit is not self-explanatory. *Id.* at 11. In response to the defense's

motion, and only five days after the deadline for expert disclosures (and well before trial), *accord United States v. Maxwell*, 534 F. Supp. 3d 299, 325 (S.D.N.Y. 2021), the Government supplemented its notice and provided the defense with the information that Petersohn will testify that in a setting such as the Bronx, an urban cell site usually covers just a few city blocks, with the typical range being approximately two to three city blocks and the maximum range being about five or six city blocks. Dkt. No. 99 at 16. That disclosure cures any even arguable deficiency in the Government's earlier disclosure.[3] *Cf. United States v. Longo*, 70 F. Supp. 2d 225 (W.D.N.Y. 1999).

The defense further complains that the disclosure for Iliakostas does not disclose the "specific slang words the expert will opine about" and that it "is entitled to notice of the specific phrases Ms. Iliakostas deems slang." Dkt. No. 87 at 19. But that argument misunderstands the purpose of Ms. Iliakostas's expert testimony. She is being called as a translator to testify to her understanding of the meaning of the words that appear on audio messages recovered from Rosario's phone as well as the victims' statements to the police at the time of the initial police response to the March 31 robbery, and not as to whether the interpretation that she gives those words correspond to any particular definition in any particular Spanish-English dictionary. The defense has been given Ms. Iliakostas's translations as well as the professional basis for the translations—she "works largely with native speakers of Caribbean Spanish and Colombian Spanish, primarily in cases involving narcotics and violent crimes." Dkt. No. 99 at 17. The defense can retain their own translator and challenge Ms. Iliakostas's translations. But the

---

[3] The Court has examined the charts and does not find them to be misleading. *See United States v. Ray,* 2022 WL 101911, at *6 n.2 (S.D.N.Y. Jan. 11, 2022). The expert will be given the opportunity to explain them at trial.

defense is not entitled to a word-for-word description of which words the translator deems to be slang and which words are not.

## CONCLUSION

For the foregoing reasons, with the exception of the evidence of Victim 2's statements, as to which the Court reserves judgment, the Government's motions *in limine* are GRANTED and Defendant's motions *in limine* are DENIED.

SO ORDERED.

Dated: December 28, 2023
New York, New York

_____
LEWIS J. LIMAN
United States District Judge